IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN ANTHONY DOUGLAS, | No. C 09-3191 LHK (PR) |
| Plaintiff, | ORDER DENYING DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; FURTHER SCHEDULING ORDER |
| vs. | |
| BANKS, et al., | |
| Defendants. | (Docket Nos. 63, 70, 96) |

Plaintiff Bryan Anthony Douglas, proceeding pro se, filed a second amended civil rights complaint pursuant to 42 U.S.C. § 1983 against prison officials at San Quentin State Prison ("SQSP"), where he was formerly housed, and at Salinas Valley State Prison ("SVSP"), where he is currently housed. SQSP Defendants have moved to dismiss Plaintiff's second amended complaint ("SAC") for failure to exhaust administrative remedies. SVSP Defendants have moved for summary judgment, arguing that there is no disputed issue of material fact, and that they are entitled to judgment as a matter of law. Plaintiff has opposed both motions, and Defendants have filed a reply. Having carefully considered the papers submitted, the Court hereby DENIES SQSP Defendants' motion to dismiss, and GRANTS SVSP Defendants' motion for summary judgment, for the reasons set out below. The Court further directs SQSP Defendants to file a motion for summary judgment, or inform the Court that no such motion is warranted.

**BACKGROUND**[1]

A.  Facts at SQSP

On January 9, 2009, Plaintiff arrived at SQSP and informed Defendant Dr. Banks about his allergies to fish and nut products. (SAC at 5.) On January 19, 2009, Plaintiff inadvertently ate pecan breaded chicken, which required him to be transported and treated at Marin General Hospital for an anaphylactic reaction. (*Id.* at 6.) On January 20, 2009, Plaintiff saw Defendant Dr. Garrigan for a follow-up evaluation and requested a medical diet. (*Id.*) That request was denied. (*Id.*) Dr. Garrigan referred Plaintiff to a dietician. (*Id.*) Plaintiff later saw Defendant Registered Nurse Perea and Dr. Wu, both of whom rejected Plaintiff's request for a medical diet due to allergies. (*Id.*)

On February 4, 2009, Plaintiff submitted an inmate grievance, SQP-09-13389, regarding his food allergies. (*Id.*; Harless Decl., Ex. B.) Specifically, Plaintiff complained that although he had made staff aware of his allergies to fish and nuts, over the course of two months, he was still receiving such products, and was not given a protein substitute once those products were removed. (Harless Decl., Ex. B.) Plaintiff's appeal was granted at the first level of review, Plaintiff was given the appropriate paperwork to receive peanut and fish-free meals, and was seen by the dietician. (*Id.* at Ex. C.) On March 3, 2009, Plaintiff filed an appeal at the second level of review, alleging that he had received a lunch with almonds in it, and although he did receive paperwork, the prison was not honoring it, nor was he being provided a protein substitute. (*Id.*) On March 27, 2009, Plaintiff's appeal was granted at the second level of review. (*Id.*) Specifically, the response indicated, *inter alia*, that Plaintiff would receive substitutions for peanuts and fish products when peanuts or fish were included in the meals, that the SQSP food service department would accommodate him for his special dietary needs, and that Plaintiff would receive a copy of the Standardized Departmental Menu in order to determine whether a protein substitute was necessary ahead of time. (*Id.*) In April 2009, Plaintiff submitted an appeal to the Director's Level of Review. (Warren Decl., Exs. A & B; Opp. at ¶ 8.) In May 2009, the appeal was screened out and returned because it was missing necessary

---

[1] The following facts are undisputed unless otherwise indicated.

information and documentation. (Warren Decl., Ex. A; Opp. at ¶ 8.) Plaintiff resubmitted his appeal, which was received on June 5, 2009. (Warren Decl., Ex. B.) In it, Plaintiff alleged that although he received a chrono for a diet free of fish and nuts, he was still being served fish and nut products. (Warren Decl., Ex. C.) In one instance, when Plaintiff notified an officer on duty, the officer took the offensive food product away, but refused to replace it with an appropriate substitute. (*Id.*) Plaintiff's appeal was denied on the grounds that Plaintiff's issues were adequately addressed in both the first and second levels of review. (*Id.*)

B.     Facts at SVSP

Defendant Dr. Sepulveda has been the Chief Medical Officer for SVSP since October 12, 2009. (Decl. Sepulveda at ¶ 1.) The California Department of Corrections and Rehabilitation ("CDCR") policy on food allergies provided that a prisoner's primary care physician would evaluate prisoners who requested a special diet due to food allergies. (*Id.* at ¶ 2, Ex. A.) Medical diets are only offered to those who received renal dialysis and those who needed gluten-free diets. (*Id.* at ¶ 4.) If a prisoner has a food allergy, the responsibility is on the inmate to identify and avoid the offending food products. (*Id.*) The Chief Medical Officer must approve any chrono ordering a food substitution, and no food substitution is approved unless it is found to be medically necessary, and the inmate is not receiving proper nutrition. (*Id.* at ¶ 5.)

On December 29, 2009, Plaintiff arrived at SVSP from Mule Creek State Prison. (SAC at 10.) On January 1, 2010, Plaintiff submitted a medical appeal, stating that he was allergic to fish and nut products and had previously experienced life-threatening allergic attacks. (*Id.*) On January 8, 2010, Dr. Gamboa remarked that Plaintiff's chrono appeared valid and should be honored. (*Id.*) After Plaintiff informed Dr. Gamboa that his chrono was not being honored, Dr. Gamboa referred him to a dietician. (*Id.*; Opp., Exs. C-05 - C-09.)

On January 26, 2010, Defendant Supervising Cook Kersch was made aware of Plaintiff's food allergies, but did not ensure that Plaintiff received substitutions. (Plaintiff's Aff. at 21.) That same day, Plaintiff was told that inmates were expected to take responsibility for their own medical diet needs, that a medical staff or a dietician would give diet instructions to inmates, and that Plaintiff needed medical approval to get special diets for food allergens. (Opp., Ex. C-02

(Informal Level of Review).)

On February 5, 2010, Defendant Registered Dietician C. Watson met with Plaintiff. (Decl. Watson at ¶ 2, Ex. A.) They discussed Plaintiff's food allergies, and Plaintiff requested cheese, eggs, beans, or meat as substitutes on the days that fish and nut products were served. (Decl Watson, Ex. A; Plaintiff's Aff. at 10.) Watson informed Plaintiff that his ideal weight for a man his height was 166 pounds. (Decl. Watson at ¶ 5, Ex. A.) At that time, Plaintiff weighed 205 pounds. (Decl. Watson at ¶ 5, Ex. A.) Based on Plaintiff's basal metabolic index ("BMI"), Plaintiff was categorized as Obese state 1. (Decl. Watson at ¶ 5, Ex. A.) Plaintiff's previous lab report in June 2009 indicated that his albumin level was 4.2, and Watson indicated that, at that time, his protein status was "good." (Decl. Watson, Ex. A.) Watson recommended a follow up lab panel to assess Plaintiff's nutrient needs. (Decl. Watson, Ex. B.)

On March 10, 2010, Defendant Stone, Assistant Correctional Food Manager, was told to honor Plaintiff's chrono from another institution. (Opp., Ex. C-02 (First Level Review, L-10-00307).) That chrono was valid through August 6, 2010, and stated that Plaintiff was to have no fish and no nuts. (Plaintiff's Aff. at 13; Opp., Ex. C-02 (Mule Creek State Prison CAC dated 8/7/09, with a noted expiration of 8/6/10).) The First Level of Review partially granted Plaintiff's appeal, stating that he would be able to receive a protein substitute when fish or nuts are served. (Opp., Ex. C-02 (First Level Review, L-10-00307).) That day, Defendant Supervising Cook Fagan became aware of Plaintiff's allergies and erroneously placed him on the vegetarian's list as an alternative to the general inmate menu. (Plaintiff's Aff. at 13.) The vegetarian list substitutes meat proteins with peanut butter. (*Id.*)

On April 16, 2010, Defendants White, Rieimdo, and Orgarrio refused to serve Plaintiff a protein substitute for the peanut butter served that day, but, substituted it with extra pancakes instead. (*Id*. at 14.) On May 28, 2010, Defendant Bolanos informed Defendants Esparza and Davis that Plaintiff requested a substitution of cheese in lieu of the fish that was served, and no protein substitute was given. (*Id.* at 15.) When Plaintiff asked Bolanos to confirm that Plaintiff had the appropriate documents to receive the substitution, Bolanos refused to voluntarily do so unless specifically questioned. (*Id.* at 16.)

On June 5, 2010, Sepulveda approved Plaintiff's chrono that Plaintiff should not eat fish and nut products. (Decl. Sepulveda at ¶ 6, Ex. B.) On June 8, 2010, Plaintiff requested a substitution for the peanut butter being served. (Plaintiff's Aff. at 17.) As breakfast came to a close, Plaintiff was given a bag with a substituted meal. (*Id.*) Plaintiff took that bag, along with the normal sack lunch. (*Id.*) Defendant Lord disbelieved that Plaintiff was receiving a substitute, and thought that Plaintiff had an "extra" lunch, and confiscated the bag. (*Id.*)

In July 2010, Watson met with Plaintiff again, and reminded him that Plaintiff knew fish was being served once or twice a week, and that peanut butter was also regularly served. (Decl. Watson at ¶ 3.) Plaintiff was told that avoiding the offending foods also helped him achieve the goal of reducing his current weight. (*Id.*) In addition, Plaintiff was told that fish and nuts are not used within recipes at SVSP, and that a food substitution was not medically indicated for him.[2] (*Id.*) Watson noted that from January 2010 through August 2010, Plaintiff gained 39 pounds, and his BMI increased so as to place him in the Obese II category, placing him at a high risk of disease. (Decl. Watson at ¶ 10, Ex. B.)

On July 28, 2010, Plaintiff's appeal at the Director's level of review was denied. (Opp., Ex. C-02 (SVSP 10-00307).) On July 31, 2010, Defendant Miranda told Plaintiff that his supervisors, Defendants Conway, Stone, Pompey, Scruggs, and Fagan, instructed that Plaintiff would no longer receive any substitutions on the days that fish and nut products were to be served. (SAC at 12.) Plaintiff was told that extra calories are included in the meals for inmates so even if he received no substitutes for the foods he should avoid, he would still receive adequate nutrition. (Decl. Watson at ¶ 6.)

Defendant Dr. Sullivan was Plaintiff's primary care physician at SVSP and examined him seven times between April 8, 2010, and December 7, 2010. (Decl. Sullivan at ¶¶ 2-3.) Sullivan opined that it was not medically necessary for Plaintiff to have a chrono for a food

---

[2] Although Plaintiff disputes that he was told that it was his responsibility to avoid the foods, included within his exhibits is a copy of Watson's recommendations, dated July 13, 2010, stating the same, as well as a letter dated July 31, 2010, in which Plaintiff wrote, "Watson states to simply avoid the offending food, that goes without saying, but in doing so, unless you are providing me a substitute, you are denying me the required 3 meals aday [sic] . . ."). (Opp., Ex. C-12.)

substitution when fish or nuts were served with meals. (*Id.* at ¶ 3.) Between August 19, 2010 and November 5, 2010, Plaintiff had three lab tests performed on him. (*Id.* at ¶ 5.) Each lab test result showed that Plaintiff's nutritional status and protein levels were within normal ranges. (*Id.*, Exs. A-C.)

Plaintiff filed his SAC on September 2, 2010, alleging that Defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. SQSP Defendants filed a motion to dismiss for failure to exhaust administrative remedies, and SVSP Defendants have filed a motion for summary judgment. The Court will address each motion in turn.

## DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO EXHAUST

I. <u>Legal Standard</u>

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 28 U.S.C. § 1997e(a). Nonexhaustion under § 1997e(a) is an affirmative defense; that is, Defendants have the burden of raising and proving the absence of exhaustion. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). In deciding a motion to dismiss for failure to exhaust administrative remedies, the Court may look beyond the pleadings and decide disputed issues of fact. *Id.* at 1119-20. If the Court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal without prejudice. *Id.* at 1120.

Failure to exhaust is an affirmative defense under the PLRA. *Jones v. Bock*, 549 U.S. 199, 211 (2007). Defendants have the burden of raising and proving the absence of exhaustion, and inmates are not required to specifically plead or demonstrate exhaustion in their complaints. *Id.* at 215-17. As there can be no absence of exhaustion unless some relief remains available, a movant claiming lack of exhaustion must demonstrate that pertinent relief remained available, whether at unexhausted levels or through awaiting the results of the relief already granted as a result of that process. *Brown v. Valoff*, 422 F.3d 926, 936-37 (9th Cir. 2005).

II. <u>Analysis</u>

1     On February 4, 2009, Plaintiff submitted an administrative appeal regarding his food allergies. (Decl. Harless, Ex. B.) It was bypassed at the informal level. (*Id.*) At the first level of review, Plaintiff was granted relief in that he was seen by a dietician and given the appropriate paperwork to receive nut and fish free meals. (*Id.*, Ex. C.) Plaintiff appealed that decision, stating that on March 2, 2009, he received a lunch that contained almonds in it. (*Id.*) At the second level of review, he was granted relief in that the Chief Medical Officer stated that SQSP is able to accommodate his need for a fish and nut free diet, and, it was verified that Plaintiff was receiving the ordered protein substitutes. (*Id.*) On April 18, 2009, Plaintiff submitted an appeal to the Director's level of review, complaining that he was dissatisfied because SQSP was still serving him nuts and fish, and SQSP was planning to ship him to a different facility instead of complying with its statement that it would accommodate his needs. (Decl. Warren, Ex. C.) On May 1, 2009, Plaintiff's appeal was returned to him because it was incomplete. (*Id.* at ¶ 6.) On June 5, 2009, Plaintiff resubmitted his appeal. (*Id.* at ¶ 7.) On February 5, 2010, Plaintiff's appeal was denied at the Director's level of review. (*Id.*, Ex. C.)

Defendants argue that because Plaintiff commenced this action and filed his original complaint on July 14, 2009 -- after he filed his Director's level review, but before the requisite 60 working days had passed in which the Director has to respond, *see* Cal. Code Regs., tit. 15 § 3084.8(c)(3) -- he failed to exhaust his administrative remedies. Defendants also distinguish *Rhodes v. Robinson*, 621 F.3d 1002 (9th Cir. 2010), from Plaintiff's case. In *Rhodes*, the Ninth Circuit held that the PLRA's exhaustion requirement was satisfied with respect to new but related claims asserted in a supplemental pleading that "arose after the initial complaint was filed" if the new claims were exhausted prior to the filing of the supplemental pleading. *Id.* at 1006-07. Defendants acknowledge that, by the time Plaintiff filed his SAC, his administrative remedies against all Defendants, including SQSP Defendants were exhausted, however, they argue that because the events and claim concerning SQSP Defendants were known before the filing of Plaintiff's original complaint, *Rhodes* does not apply. This Court is persuaded that the *Rhodes* holding does not apply to Plaintiff's case.

However, Plaintiff was granted relief in both his first and second levels of review. "An inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in

Order Denying Defendants' Motion to Dismiss; Granting Motion for Summary Judgment; Further Scheduling Order
P:\PRO-SE\SJ.LHK\CR.09\Douglas191mtd&msj.wpd     7

1  order to exhaust his administrative remedies." *Harvey v. Jordan*, 605 F.3d 681, 685 (9th Cir.
2  2010). In *Harvey*, the prisoner filed a grievance, requesting a timely hearing on his disciplinary
3  charge, and he received a decision granting him relief. *See id.* at 684-85. Five months later,
4  having still received no hearing, the prisoner filed an appeal at the second level of review, which
5  was rejected as untimely. *See id.* at 685. The Ninth Circuit concluded that the prisoner had
6  indeed exhausted his claim, reasoning, "Once the prison officials purported to grant relief with
7  which he was satisfied, his exhaustion obligation ended. His complaint had been resolved, or so
8  he was led to believe, and he was not required to appeal the favorable decision." *Id.* The Court
9  also explained, "Nor is it the prisoner's responsibility to ensure that prison officials actually
10 provide the relief that they have promised. *See Abney v. McGinnis*, 380 F.3d 663, 669 (2d Cir.
11 2004) ("A prisoner who has not received promised relief is not required to file a new grievance
12 where doing so may result in a never-ending cycle of exhaustion.")." *Id.*

13     Similarly here, Plaintiff received the relief he requested. He was told that SQSP could
14 accommodate his dietary needs, that he should inform his unit correctional officer promptly if he
15 received an incorrect food tray or bagged lunch, and that he would receive protein substitutions
16 as ordered. (Decl. Harless, Ex. C.) Plaintiff filed an appeal to the Director's level of review
17 because he alleged that even after being granted his appeal, he was still being served fish and
18 nuts. (Decl. Warren, Ex. C.) In light of *Harvey*, this Court concludes Plaintiff was not required
19 to appeal from the grant of relief that he received in order to exhaust his administrative remedies.
20 *See Harvey*, 605 F.3d at 685. Because the burden lies with Defendants to demonstrate that
21 Plaintiff failed to exhaust, the Court finds insufficient evidence to support the dismissal of the
22 SQSP Defendants for failure to exhaust. Thus, the motion to dismiss is DENIED. SQSP
23 Defendants are directed to file a motion for summary judgment or notice that they believe no
24 such motion is warranted.

25                    **SVSP DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
26 I.     Legal Standard
27     Summary judgment is proper where the pleadings, discovery and affidavits demonstrate
28 that there is "no genuine issue as to any material fact and that the moving party is entitled to
judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect

the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The Court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the Court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

II.   Analysis

Plaintiff claims that SVSP Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment right to be free from cruel and unusual punishment.[3] He clarifies that he is not arguing that SVSP Defendants were not giving him anything to replace the offending food products, but rather, that they were not replacing them with a protein

---

[3] To the extent Plaintiff intended to allege that Defendants violated his right to equal protection (Opp. at 12-13), Plaintiff raised this claim for the first time in his opposition to Defendants' Motion for Summary Judgment. In its discretion, the Court will not consider this new claim. *See Stallcop v. Kaiser Foundation Hospitals*, 820 F.2d 1044, 1050 n.5 (9th Cir. 1987) (declining to consider claim raised for the first time in opposition to motion for summary judgment, but never alleged in the complaint).

1  substitute.  (Opp. at 7, 11.)  Plaintiff believes that it is medically necessarily for him to receive a
2  protein substitute because he is entitled to three balanced meals containing protein sources.  (*Id.*
3  at 13.)

   A.  <u>Deliberate Indifference to Medical Needs</u>

Prisoners can establish an Eighth Amendment violation with respect to medical care if they can prove there has been deliberate indifference to their serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  A determination of "deliberate indifference" involves an examination of two elements:  the seriousness of the prisoner's medical need and the nature of the Defendants' response to that need.  *McGuckin*, 974 F.2d at 1059.

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain."  *Id.* (*citing Estelle*, 429 U.S. at 104).  The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment.  *Id.* at 1059-60 (*citing Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference."  *Id.*  If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.  *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).

The parties do not dispute that Plaintiff has a serious medical need.  Thus, the only issue is whether there is a genuine issue of material fact regarding whether Defendants exhibited deliberate indifference in their actions or inactions.  Specifically, Plaintiff asserts that they were deliberately indifferent to his needs by not providing protein substitutes in lieu of any served nut

or fish product.

While food is a basic human need that is protected by the Eighth Amendment, the Eighth Amendment only requires that prisoners receive food that is adequate to maintain health. *Cf. LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) (temporary diet of Nutraloaf, which exceeded inmate's daily nutritional requirements, does not violate Eighth Amendment). Helpful to this analysis is *Davies v. Low*, No. S-03-0014 LKK JFM P, 2006 WL 2478063 (E.D. Cal. Aug. 28, 2006), *adopted by Davies v. Low*, No. S-03-0014 LKK JFM P, 2006 WL 3780856 (E.D. Cal. Dec. 21, 2006), *affirmed by Davies v. Low*, No. 07-15046, 2008 WL 4707539 (9th Cir. Oct. 16, 2008) (unpublished memorandum disposition).

In *Davies*, the prisoner claimed he had an allergy to eggs and tomatoes, and alleged that the prison officials failed to provide him an adequate diet in light of his food allergies. 2006 WL 2478063 at *1. The district court noted that the facts were undisputed that the prisoner's weight had been within normal limits, and the need for additional nutrition or supplements was debatable. *Id.* at *7. The court also indicated there was a difference of opinion as to whether the prisoner needed food supplementation in order to achieve an adequate diet. *Id.* Thus, the district court concluded that there was no genuine issue of material fact, and granted summary judgment to the Defendants.

Similarly here, SVSP Defendants argue that they did not disregard Plaintiff's medical needs by failing to provide protein substitutes.

Defendants presented evidence that the Estimated Nutrient Need for an active male was 2400 calories and 66 grams of protein. (Opp., Ex. C-02 (July 28, 2010 Director's Level of Review); Decl. Watson at ¶ 6.) The caloric intake of meals in general was 2900-3200 per day. (Opp., Ex. C-02 (July 28, 2010 Director's Level of Review).) Even avoiding fish and nut products, the SVSP menu averages the minimum requirements. (Decl. Watson at ¶ 6.) Moreover, each meal generally contained an extra 300-400 calories so that an inmate who chose not to eat a particular item may still obtain adequate nutrition. (Opp., Ex. C-12 (Standard/Special Diets for CA Prison Health Care Services).) Defendants provide evidence that, regardless of the exact amount of calories or protein in Plaintiff's daily diet, it was nutritionally sufficient. (Decl. Sullivan at ¶¶ 3-7; Decl. Watson at ¶ 9.) Plaintiff disputes that

he was getting an average of 2400 calories and 66 grams of protein. (Plaintiff's Aff. at 25-26.) Plaintiff provides no evidence refuting that his diet was not nutritionally sufficient. *See In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (recognizing that once the moving party meets its burden of demonstrating the absence of a genuine issue of material fact, "[t]he non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue.").

In addition, in February 2010, Watson informed Plaintiff that he was in the Obese I category, and later, in July 2010, Watson informed Plaintiff that his weight had increased by 39 pounds, placing him in the Obese II category. (Decl. Watson at ¶¶ 5, 10.) Plaintiff attempts to explain his weight fluctuation by stating that he had excess skin from previous weight loss, and chronic lymphedema which caused him to retain excessive amounts of fluid. (Plaintiff's Aff. at 12.) However, besides his self-serving and conclusory statements, there is no other evidence of this. *See In re Oracle Corp. Securities Litigation*, 623 F.3d at 387.

Plaintiff insists that Sepulveda did order food substitution on March 10, 2010. Specifically, the summary of investigation from one of Plaintiff's administrative appeals at the First Level of Review states, "On 3/10/2010 Dr. Sepulveda told N. Stone, Assistant Correctional Food Manager that Food Services should go ahead and honor the existing chrono. You will receive a protein substitute when fish or peanut butter is served." (Opp., Ex. C-02 (First Level Review, L-10-00307).) However, nothing in this First Level of Review explicitly states that Sepulveda medically ordered a food substitution. (*Id.*) Further, the "existing chrono" referred to in the First Level of Review was from a different institution, and also does not include a directive or order for an approved food substitution; there is merely a notation of "no nuts no fish." (Opp., Ex. C-02 (Mule Creek State Prison CAC date 8/7/09).) In addition, within the approximately 290 pages of exhibits regarding his claims at SVSP, there is no evidence besides Plaintiff's interpretation of the above statements demonstrating that Sepulveda ordered a food substitution. Moreover, Sepulveda himself states that he never ordered a food substitution. (Decl. Sepulveda at ¶ 7.) The CDCR policy on food allergies provided that a prisoner's primary care physician would evaluate prisoners who requested a special diet due to food allergies. (Decl. Sepulveda at ¶ 2, Ex. A.) It further stated that it is the prisoner's duty to identify and

avoid offending food products. (*Id.*) According to the policy, Sepulveda must approve any chrono ordering a food substitution, and would not do so unless it was found to be medically necessary, and the inmate was not receiving proper nutrition. (*Id.* at ¶ 5.) Although the Court must find disputed facts in favor of Plaintiff, a review of the prior chrono does not indicate that a food substitution was medically ordered. Plaintiff's interpretation of the summary of investigation at the First Level of Review is merely colorable, and does not provide evidence sufficient to create a genuine issue of material fact. *See Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001); *see also Anderson*, 477 U.S. at 249-50;*Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005) (in equal protection case, conclusory statement of bias not sufficient to carry nomoving party's burden).

In August 2010, September 2010, and November 2010, Plaintiff's lab results showed that he remained within the normal range for both nutritional status and protein levels. (Decl. Sullivan at ¶¶ 5-7, Exs. A – C.) Sullivan, Plaintiff's primary care physician; Sepulveda, the Chief Medical Officer of SVSP; and Watson all agreed that providing Plaintiff with no substitutions in place of the offending food allergens would not be harmful, and that food and protein substitutes were not medically necessary for Plaintiff. (Decl. Sullivan at ¶¶ 3-4; Decl. Sepulveda at ¶ 7; Decl. Watson at ¶ 11.) In fact, they concluded that such substitutions were medically contra-indicated in light of his increase in weight and placement into the Obese II category. (Decl. Sepulveda at ¶ 7; Decl. Watson at ¶ 11.)

Although Plaintiff disputes Defendants' conclusion, "[a] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). In order to prevail on a claim involving choices between alternative courses of treatment, plaintiff must show that the course of treatment the doctor chose was medically unacceptable under the circumstances and that he chose this course in conscious disregard of an excessive risk to plaintiff's health. *See Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). Plaintiff has not done so.

None of the events recounted in the SAC, nor Plaintiff's medical records involving SVSP Defendants are sufficient to support the claims that SVSP Defendants violated the Eighth Amendment by failing to provide Plaintiff with protein substitutes. The evidence presented

merely reflects Plaintiff's dissatisfaction and disagreement with the course of treatment provided at SVSP.  The Constitution is not violated when appropriate medical treatment is provided.

In short, there is no evidence to suggest the food choices SVSP Defendants provided to Plaintiff were not adequate to maintain his health.  The medical records reflected Plaintiff gained weight during his time in prison, maintained a nutritional status and protein level within the normal range, and there is no evidence suggesting that Plaintiff suffered any ill health related to inadequate nutrition.  Thus, Plaintiff has not established a genuine issue for trial on his claim that SVSP Defendants were deliberately indifferent to his serious medical needs when they failed to provide him with protein substitutes.  Accordingly, SVSP Defendants are entitled to summary judgment as a matter of law.  *See Celotex Corp.*, 477 U.S. at 323.  SVSP Defendants' motion for summary judgment is GRANTED.[4]

## CONCLUSION

1. SQSP Defendants' motion to dismiss for failure to exhaust administrative remedies is DENIED.  SVSP Defendants' motion for summary judgment is GRANTED.  Plaintiff's motion for preliminary injunction against SVSP Defendants is DENIED as moot.

2. No later than **sixty (60) days** from the date of this order, SQSP Defendants shall file a motion for summary judgment or other dispositive motion, or notify the Court that they are of the opinion that this case cannot be resolved by such a motion.  Any motion for summary judgment shall be supported by adequate factual documentation and shall conform in all respects to Rule 56 of the Federal Rules of Civil Procedure.  Defendants are advised that summary judgment cannot be granted, nor qualified immunity found, if material facts are in dispute.

3. Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendants no later than **thirty (30) days** from the date Defendants' motion is filed.

    a. In the event Defendants file an unenumerated motion to dismiss under

---

[4] At minimum, Defendants are entitled to qualified immunity because reasonable prison officials could have believed that their conduct was lawful under the circumstances.  *See Saucier v. Katz*, 533 U.S. 194, 205-06 (2001).

Order Denying Defendants' Motion to Dismiss; Granting Motion for Summary Judgment; Further Scheduling Order
P:\PRO-SE\SJ.LHK\CR.09\Douglas191mtd&msj.wpd    14

Rule 12(b), Plaintiff is hereby cautioned as follows:[5]

> The defendants have made a motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, on the ground you have not exhausted your administrative remedies. The motion will, if granted, result in the dismissal of your case. When a party you are suing makes a motion to dismiss for failure to exhaust, and that motion is properly supported by declarations (or other sworn testimony) and/or documents, you may not simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or documents, that contradict the facts shown in the defendant's declarations and documents and show that you have in fact exhausted your claims. If you do not submit your own evidence in opposition, the motion to dismiss, if appropriate, may be granted, and the case dismissed.

b.   In the event Defendants file a motion for summary judgment, the Ninth Circuit has held that the following notice should be given to plaintiffs:

> The defendants have made a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
>
> Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact--that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted in favor of defendants, your case will be dismissed and there will be no trial.

*See Rand v. Rowland*, 154 F.3d 952, 963 (9th Cir. 1998) (en banc). Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (holding party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim). Plaintiff is cautioned that failure to file an opposition to Defendants' motion for summary judgment may be deemed to be a consent by Plaintiff to the granting of the motion, and granting of judgment against Plaintiff without a trial. *See Ghazali v. Moran*, 46 F.3d 52, 53-54 (9th Cir. 1995) (per curiam); *Brydges v.*

---

[5] The following notice is adapted from the summary judgment notice to be given to pro se prisoners as set forth in *Rand v. Rowland*, 154 F.3d 952, 963 (9th Cir. 1998) (en banc). *See Wyatt v. Terhune*, 315 F.3d at 1120 n.14.

Order Denying Defendants' Motion to Dismiss; Granting Motion for Summary Judgment; Further Scheduling Order
P:\PRO-SE\SJ.LHK\CR.09\Douglas191mtd&msj.wpd   15

1  *Lewis*, 18 F.3d 651, 653 (9th Cir. 1994).

2      4.    Defendants <u>shall</u> file a reply brief no later than **fifteen (15) days** after Plaintiff's
3  opposition is filed.

4      5.    The motion shall be deemed submitted as of the date the reply brief is due.  No
5  hearing will be held on the motion unless the court so orders at a later date.

6      6.    All communications by the Plaintiff with the court must be served on Defendants'
7  counsel, by mailing a true copy of the document to Defendants' counsel.

8      7.    Discovery may be taken in accordance with the Federal Rules of Civil Procedure.
9  No further Court order is required before the parties may conduct discovery.

10     For Plaintiff's information, the proper manner of promulgating discovery is to send
11 demands for documents or interrogatories (for example, questions asking for specific, factual
12 responses) directly to Defendants' counsel.  *See* Fed. R. Civ. P. 33-34.  The scope of discovery is
13 limited to matters "relevant to the claim or defense of any party . . ."  *See* Fed. R. Civ. P.
14 26(b)(1).  Discovery may be further limited by court order if "(i) the discovery sought is
15 unreasonably cumulative or duplicative, or is obtainable from some other source that is more
16 convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample
17 opportunity by discovery in the action to obtain the information sought; or (iii) the burden or
18 expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(2).  <u>In
19 order to comply with the requirements of Rule 26, before deciding to promulgate discovery
20 Plaintiff may find it to his benefit to wait until Defendants have filed a dispositive motion which
21 could include some or all of the discovery Plaintiff might seek.</u>  In addition, no motion to compel
22 will be considered by the Court unless the meet-and-confer requirement of Rule 37(a)(2)(B) and
23 N.D. Cal. Local Rule 37-1 has been satisfied.  Because Plaintiff is detained, he is not required to
24 meet and confer with Defendants in person.  Rather, if his discovery requests are denied, and he
25 intends to seek a motion to compel, he must send a letter to Defendants to that effect, offering
26 them one last opportunity to provide him with the sought-after information.

27     8.    It is Plaintiff's responsibility to prosecute this case.  Plaintiff must keep the Court
28 and all parties informed of any change of address and must comply with the Court's orders in a
   timely fashion.  Failure to do so may result in the dismissal of this action for failure to prosecute

Order Denying Defendants' Motion to Dismiss; Granting Motion for Summary Judgment; Further Scheduling Order
P:\PRO-SE\SJ.LHK\CR.09\Douglas191mtd&msj.wpd    16

1  pursuant to Federal Rule of Civil Procedure 41(b).

2      IT IS SO ORDERED.

3  DATED: __4/25/11__

                                    LUCY H. KOH
                                    United States District Judge