IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN ANTHONY DOUGLAS,<br><br>   Plaintiff,<br><br> vs.<br><br>DR. BANKS, et al.,<br><br>   Defendants. | No. C 09-3191 LHK (PR)<br><br>ORDER GRANTING SQSP DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(Docket No. 111) |

  Plaintiff Bryan Anthony Douglas, proceeding *pro se*, filed a second amended complaint ("SAC") pursuant to 42 U.S.C. § 1983 against prison officials at San Quentin State Prison ("SQSP") and Salinas Valley State Prison ("SVSP"), where he was formerly housed.

  In an Order dated April 25, 2011, the Court granted SVSP Defendants' motion for summary judgment and denied SQSP Defendants' motion to dismiss. The Court directed SQSP Defendants to file a motion for summary judgment, or to inform the Court that no such motion was warranted. SQSP Defendants (hereinafter "Defendants") subsequently moved for summary judgment, arguing that there is no disputed issue of material fact, and that they are entitled to judgment as a matter of law. Plaintiff has opposed the motion, and Defendants have filed a reply. Having carefully considered the papers submitted, the Court hereby GRANTS Defendants' motion for summary judgment, for the reasons set out below.

### BACKGROUND

  The following facts are undisputed unless otherwise noted.

1    On January 9, 2009, Plaintiff arrived at SQSP, and he remained incarcerated there until
2 his transfer to Calipatria State Prison almost three months later, on April 3, 2009.  (SAC at 5-7.)
3    When Plaintiff first arrived at SQSP, he was examined by SQSP reception center
4 physician, Defendant Dr. Banks.  (Kirschenbauer Decl., Ex. D at 2.)  Plaintiff claims he
5 informed Defendant Banks about his allergies to fish and nut products.  (SAC at 5.)  The record
6 shows that Defendant Banks, pursuant to prison policy, noted in the medical intake form that
7 Plaintiff was allergic to fish and nut products.  (Kirschenbauer Decl., Exs. B at 1 & E at 3-4.)
8 On January 9, 2009, Defendant Banks also prepared a chrono[1] indicating that Plaintiff was
9 allergic to fish and nut products.  (*Id.*, Ex. C.)  Plaintiff claims that Defendant Banks
10 "failed/refused to note fish and nut allergies and need for medical diet."  (SAC at 5.)  Plaintiff
11 attaches the "Comprehensive Accommodation Chrono" prepared by Defendant Banks on January
12 12, 2009, which does not include any food allergies, but indicates that Plaintiff needs housing in
13 a "lower tier," requires medical equipment including a Continuous Positive Airway Pressure or
14 CPAP machine and a "circacaid [sic] device," and has "lower extremity weakness" causing him
15 to be "unable to climb ladders."  (Opp'n to Kirschenbauer Decl., Ex. A.)  The record shows that
16 Defendant Banks's chrono dated January 9, 2009 indicates that Plaintiff suffers from an allergy
17 to "fish, nuts."  (Kirschenbauer Decl., Ex. C.)  However, Plaintiff argues that he did not receive
18 the January 9, 2009 chrono because he claims that upon arriving at SQSP he "could not instruct
19 dining staff nor officers that allergens were to be avoided due to lack of medical documentation."
20 (Opp'n to Kirschenbauer Decl. at 1.)
21    On January 16, 2009, Plaintiff claims he submitted a 602 inmate appeal "stating [his]
22 concern about the frequency of fish and nut products."  (SAC at 6.)  He also "expressed fear of
23 exposure, as the peanutbutter [sic] served was placed directly on other foods, i.e. pancakes,
24 french toast, etc."  (*Id.*)
25    On January 19, 2009, Plaintiff inadvertently ate pecan breaded chicken, which caused
26 him to suffer an anaphylactic reaction.  (*Id.*)  Plaintiff was immediately taken to the infirmary,

---

[1] A "chrono" is a form that allows prisoners to request certain medical accommodations as deemed necessary by medical staff.

Order Granting SQSP Defendants' Motion for Summary Judgment
G:\PRO-SE\SJ.LHK\CR.09\Douglas191SQSPmsj.wpd   2

1  and he was examined by Defendant Dr. S. Garrigan, the SQSP on-call physician.
2  (Kirschenbauer Decl., Ex. F at 2.) Defendant Garrigan treated Plaintiff by administering a shot
3  of epinephrine from an Epinephrine Auto-Injector or "EpiPen." (*Id.*) However, Defendant
4  Garrigan noted that Plaintiff "had an increased heart rate," and thus Plaintiff was sent to the
5  emergency room at Marin General Hospital for evaluation. (*Id.*)

6  On January 20, 2009, Plaintiff saw Defendant Garrigan for a follow-up evaluation and
7  requested a therapeutic diet. (*Id.*) Defendant Garrigan was not able to order a special diet at
8  SQSP; therefore, he "followed procedure and completed a request for service/referral for
9  evaluation by a dietician." (*Id.* at 2-3.) Also on January 20, 2009, Defendant Garrigan
10 completed a chrono for another EpiPen in order for Plaintiff to "have access to immediate
11 treatment if another allergic reaction should occur." (*Id.* at 3; Tootell Decl., Ex. C.)

12 On January 21, 2009 and again on February 10, 2009, Plaintiff was interviewed by
13 Defendant Registered Nurse Perea, SQSP's registered dietician. (Perea Decl. ¶¶ 2, 11; SAC at
14 6:12-28.) During the January 21 interview, Defendant Perea informed Plaintiff that "it was his
15 responsibility to avoid the foods that he [was] allergic to," and that the "Food Service
16 Department [at SQSP] [would] provide substitutions in lieu of peanuts products or fish if it's on
17 the standardized menu." (Perea Decl. ¶ 3, Ex. A.) As mentioned above, Plaintiff was provided
18 with a chrono indicating his food allergy, and he was instructed to carry that chrono with him to
19 the dining hall to show the food officers in order to make them aware of his food allergy.
20 (Kirschenbauer Decl., Ex. C.) Defendant Perea claims that he prepared another chrono for
21 Plaintiff indicating his food allergies. (Perea Decl. ¶ 8, Ex. C.) Attached to Defendant Perea's
22 declaration is the chrono he prepared which states, "DO NOT SERVE FISH OR NUT
23 PRODUCTS GIVE SUBSTITUTION." (*Id.*) In contrast, Plaintiff claims that Defendant Perea
24 "failed to note [his] allergies on chrono." (SAC at 6.) Plaintiff claims that he was told he
25 "would be placed on a Food Service List that would note [his] allergies." (*Id.*) He claims that
26 Defendant Perea "did not state that it was Plaintiff's responsibility to avoid allergens . . . ."
27 (Opp'n to Perea Decl. at 1.) Instead, Defendant Perea "stated that [Plaintiff] would receive
28 substitutions when fish and nut products [were] served." (SAC at 6.) Finally, Plaintiff claims

that Defendant Perea "failed to follow-up on [Plaintiff's] diet, as [he] continued to be served these products." (*Id.*)

On January 27, 2009, Plaintiff was provided another chrono signed by SQSP physician, Dr. Wu, which indicated Plaintiff's allergy to nut products, but "failed to note [his] fish allergies." (*Id.*; Opp'n to Tootell Decl., Ex. C.) Plaintiff also claims that Dr. Wu denied the "medical diet" Plaintiff requested. (SAC at 6.) On February 10, 2009, Defendant Perea modified that chrono to indicate (1) that Plaintiff should avoid eating fish and nut items and (2) that Plaintiff was to be provided a protein substitution on the days fish and nuts were served." (Perea Decl. ¶ 12; Ex. E.) Defendant Perea also specifically instructed the Food Services Department to provide Plaintiff with "protein substitutions such as luncheon meats, cheese, and eggs when nuts or fish products were served on the standardized menu." (*Id.* ¶ 7.)

In addition, Defendant Perea noted that Plaintiff was approximately five feet and nine inches tall and weighed approximately 237 pounds as of January 21, 2009. (Perea Decl. ¶ 4, Ex. A.) Defendant Perea added that Plaintiff's "basal metabolic index (BMI) was 35," and that he was categorized as "extremely obese." (*Id.*) Defendant Perea further elaborated on the importance of a healthy BMI as follows:

> A person's BMI is calculated by dividing a person's weight (in kilograms) by their height (in meters squared). A healthy BMI is in the range of more than 20 and less than 25. A person is considered overweight if their BMI is between 25-29.99. A person is classified Obese class I if their BMI is 30-34.99. A person is classified Obese class II, or extremely obese, if their BMI is 35-39.99. If a person is classified as Obese class II, the person may face a high risk of disease and faces greater overall health risks.

(*Id.*) Because Plaintiff's BMI was so high, gradual weight loss was recommended to Plaintiff. (*Id.* ¶ 5.) Defendant Perea discussed weight loss with Plaintiff and a goal weight of approximately 160 pounds. (*Id.*)

In his opposition to Defendant Perea's declaration, Plaintiff alleges that Defendant Perea's "use of the BMI scale is inaccurate, or [that] the scale does not take into account the excess skin from previous weight loss." (Opp'n to Perea Decl. at 2.) Plaintiff also claims that Defendant Perea never discussed, nor did Plaintiff agree to, a gradual weight loss goal of 160 pounds. (*Id.*) Plaintiff also alleges that prison staff removed allergens at times but did not replace the protein.

(Opp'n; Ex. A.)

Defendant Perea points out that "[t]he daily Estimated Nutrient Need for an active male is 2500-3000 calories a day." (Perea Decl. ¶ 6.) Based on Plaintiff's height and weight, "his estimated nutritional needs in 2009 were 1784 calories a day for health maintenance, and 58-73 gm Protein a day." (*Id.*) Defendant Perea claims that, "[e]xtra calories and protein are included in all meals for inmates, so avoiding foods that [Plaintiff] is allergic to would still provide adequate nutrition for [Plaintiff's] health maintenance at the goal weight." (*Id.*; Tootell Decl. ¶ 13.) Meanwhile, Plaintiff claims that the "Food and Drug Administration (FDA) recommends a minimum of 2,000 calories for sedentary men." (Opp'n to Perea Decl. at 2; Ex. B.)

On February 5, 2009, Defendant Dr. E. Tootell, SQSP's Chief Medical Officer, was informed of Plaintiff's food allergies. (Tootell Decl. ¶ 5.) On February 6, 2009, Defendant Tootell spoke to Plaintiff on the phone, and during that conversation Plaintiff informed him about the January 19, 2009 incident involving Plaintiff's ingestion of nut products, to which he was allergic. (*Id.*) Plaintiff also informed Defendant Tootell that he was allergic to fish products. (*Id.*) Plaintiff claimed that he had difficulty receiving protein substitutions whenever fish or nut products were served. (*Id.* ¶ 8.) Plaintiff also claimed that, when he told the correctional officers of his allergy to fish and nut products, the officers removed the food item but did not replace the food. (*Id.*) In response, Defendant Tootell informed Plaintiff that she would discuss the ability of the Food Services Department to accommodate Plaintiff's diet and to provide sufficient protein sources. (*Id.* ¶ 9.) She also informed Plaintiff that she would discuss possible housing options for him. (*Id.*) However, there was a delay for housing in medical facilities, and it was unclear whether Plaintiff would require an in-patient bed simply to provide him with a nut and fish-free diet. (*Id.*) Nevertheless, Defendant Tootell informed Plaintiff that his safety would be assured under any circumstances. (*Id.*)

Defendant Tootell followed up with other prison officials to determine if SQSP could accommodate Plaintiff's dietary restrictions while he was housed there. (*Id.* ¶ 11.) Specifically, Defendant Tootell contacted N. Taylor, Custody Captain of Central Services, and Kelly Mitchell,

Food Services Manager, regarding Plaintiff's claim that his chrono was not being honored by prison staff. (*Id.*) Prison staff informed Defendant Tootell that special trays were pre-made for Plaintiff for his breakfast and dinner, and a special bag lunch was also prepared for him. (*Id.* ¶ 12 & Ex. E.) Plaintiff was told that he needed to knock on the window when he arrived in the dining hall, and his specially-prepared tray or lunch box would be given to him. (*Id.*) However, Plaintiff was not asking for his trays or his lunch box. (*Id.*)

In contrast, Plaintiff claims that he carried the chrono as directed but "[his] chrono was not being honored nor [his] issues addressed." (SAC at 6.) Furthermore, Plaintiff states:

> Despite having a permanent chrono signed by CMO Tootell, being placed on Food Service List by R. D. Perea, notifying Doctors Banks and Garrigan, as well as the Assoc. Warden and multiple Correctional Officers about my allergies and medical needs, I continued to be served these products that they know could take my life, up until my transfer to Calipatria State Prison.

(*Id.* at 7.)

On February 11, 2009, Defendant Tootell also prepared an updated chrono for Plaintiff, indicating that he should avoid eating fish and nut products. (Tootell Decl., Ex. D; SAC at 7.)

The following is the Court's summary of Plaintiff's administrative grievance regarding his claims, taken from its April 25, 2011 Order:

> On February 4, 2009, Plaintiff submitted an inmate grievance, SQP-09-13389, regarding his food allergies. (*Id.*; Harless Decl., Ex. B.) Specifically, Plaintiff complained that although he had made staff aware of his allergies to fish and nuts, over the course of two months, he was still receiving such products, and was not given a protein substitute once those products were removed. (Harless Decl., Ex. B.) Plaintiff's appeal was granted at the first level of review, Plaintiff was given the appropriate paperwork to receive peanut and fish-free meals, and was seen by the dietician. (*Id.* at Ex. C.) On March 3, 2009, Plaintiff filed an appeal at the second level of review, alleging that he had received a lunch with almonds in it, and although he did receive paperwork, the prison was not honoring it, nor was he being provided a protein substitute. (*Id.*) On March 27, 2009, Plaintiff's appeal was granted at the second level of review. (*Id.*) Specifically, the response indicated, *inter alia*, that Plaintiff would receive substitutions for peanuts and fish products when peanuts or fish were included in the meals, that the SQSP food service department would accommodate him for his special dietary needs, and that Plaintiff would receive a copy of the Standardized Departmental Menu in order to determine whether a protein substitute was necessary ahead of time. (*Id.*) In April 2009, Plaintiff submitted an appeal to the Director's Level of Review. (Warren Decl., Exs. A & B; Opp. at ¶ 8.) In May 2009, the appeal was screened out and returned because it was missing necessary information and documentation. (Warren Decl., Ex. A; Opp. at ¶ 8.) Plaintiff resubmitted his appeal, which was received on June 5, 2009. (Warren Decl., Ex. B.) In it, Plaintiff alleged that although he received a chrono

>for a diet free of fish and nuts, he was still being served fish and nut products. (Warren Decl., Ex. C.) In one instance, when Plaintiff notified an officer on duty, the officer took the offensive food product away, but refused to replace it with an appropriate substitute. (*Id.*) Plaintiff's appeal was denied on the grounds that Plaintiff's issues were adequately addressed in both the first and second levels of review. (*Id.*)

(Apr. 25, 2011 Order at 2-3.)

Plaintiff did not suffer another allergy attack or anaphylactic reaction for the remaining time he was housed at SQSP. (Tootell Decl. ¶ 14; Perea Decl. ¶ 15.) As stated above, Plaintiff was transferred from SQSP to Calipatria State Prison on April 3, 2009. (SAC at 7:16.)

## DISCUSSION

I.  Legal Standard

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The Court is only concerned with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the Court to scour the record in search of a

genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

II.     Evidence Considered

A district court may only consider admissible evidence in ruling on a motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002).    In support of Defendants' motions for summary judgment, declarations have been filed by Defendants' Attorney Marisa Kirschenbauer as well as Defendants Tootell and Perea.

Plaintiff verified his SAC filed on September 2, 2010 by signing it under "penalty of perjury." On July 29, 2011, Plaintiff submitted his opposition as well as separate oppositions to each of the aforementioned declarations submitted by Defendants. Plaintiff's oppositions to the declaration filed by Attorney Kirschenbauer as well as Defendants Tootell and Perea are all signed under "penalty of perjury." However, Plaintiff's allegations in his opposition are not verified in conformity with 28 U.S.C. § 1746 because Plaintiff does not assert any of these statements under "penalty of perjury." Therefore, for the purposes of this Order, the Court will treat Plaintiff's SAC and his oppositions to the aforementioned declarations as affidavits in opposition to Defendants' motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

III.    Deliberate Indifference to Medical Needs

Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment right to be free from cruel and unusual punishment, and that while he was housed in SQSP from January 9, 2009 through April 3, 2009, he "feared for [his] life everytime [he] was served food." (SAC at 7.) He claims he did not receive proper medical care from Defendants relating to his allergy to fish and nut products during the three months he was incarcerated at SQSP. He argues that Defendants' deliberate indifference to Plaintiff's allergy to fish and nut products led to the January 19, 2009 incident during which he ingested food made with nut products and suffered an anaphylactic reaction. Finally, Plaintiff

claims that Defendants were not giving him "substitutions each time that fish or nut [products] were served." (*Id.* at 6.) Aside from arguing that his chrono was "not being honored," Plaintiff seems to claim that when the chrono was honored Defendants were not replacing the food with fish and nut products with a protein substitute. (*Id.*) Plaintiff appears to claim that it is medically necessarily for him to receive a protein substitute because he is entitled to three balanced meals containing protein sources. (*Id.*)

Prisoners can establish an Eighth Amendment violation with respect to medical care if they can prove there has been deliberate indifference to their serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the Defendants' response to that need. *McGuckin*, 974 F.2d at 1059.

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* (citing *Estelle*, 429 U.S. at 104). The following are examples of indications that a prisoner has a "serious" need for medical treatment: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. *Id.* at 1059-60 (citing *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." *Id.* If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).

The parties do not dispute that Plaintiff has a serious medical need. Thus, the only issue

is whether there is a genuine issue of material fact regarding whether Defendants exhibited deliberate indifference in their actions or inactions.  Specifically, Plaintiff asserts that Defendants were deliberately indifferent to his needs by: (a) failing to provide proper medical care relating to his allergy to fish and nut products; (b) possessing a "sufficiently culpable state of mind" based on their actions leading up to and after the aforementioned January 19, 2009 incident; and (c) not providing protein substitutes in lieu of any served fish or nut product.

### A. Improper Medical Care Relating to Food Allergies

Defendants argue that Plaintiff fails to show that they were deliberately indifferent to his serious medical needs by not providing proper medical care relating to his allergy to fish and nut products.

In order to establish deliberate indifference, a plaintiff must show a purposeful act or failure to act on the part of the defendant and a resulting harm.  *McGuckin*, 974 F.2d at 1060; *Shapley v. Nevado Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).  Such indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison officials provided medical care.  *See McGuckin*, 974 F.2d at 1062.

A claim of medical malpractice or negligence is insufficient to make out a violation of the Eighth Amendment.  *See Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981); *Toguchi v. Chung*, 391 F.3d 1051, 1060-61 (9th Cir. 2004); *McGuckin*, 974 F.2d at 1059 (mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights); *O'Loughlin v. Doe*, 920 F.2d 614, 617 (9th Cir. 1990) (repeatedly failing to satisfy requests for aspirins and antacids to alleviate headaches, nausea and pains is not constitutional violation; isolated occurrences of neglect may constitute grounds for medical malpractice but do not rise to level of unnecessary and wanton infliction of pain).

Here, Plaintiff's claim that Defendants failed to provide proper medical care relating to his food allergies does not support a claim of deliberate indifference.  The record amply shows that Defendants provided adequate care to Plaintiff.  Defendants examined Plaintiff on multiple

occasions and gave him adequate treatment for his food allergies during the three months he was incarcerated at SQSP. Upon his arrival at SQSP, Plaintiff's food allergies were noted on his medical intake form by Defendant Banks. The record shows that Defendant Banks then prepared a chrono indicating Plaintiff's food allergy on the same day he arrived at SQSP. During his three-month incarceration at SQSP, Plaintiff was examined by two physicians, referred to a dietician, and able to consult with the Chief Medical Officer by phone. Plaintiff was also provided multiple chronos for his food allergies, aside from the chrono given to him upon his arrival. As soon as Defendants were alerted about Plaintiff's ingestion of the food with nut products on January 19, 2009, Plaintiff received immediate treatment from Defendant Garrigan, who administered a shot of epinephrine with an EpiPen and sent Plaintiff to receive further treatment at a nearby hospital. Defendant Garrigan also offered Plaintiff a follow-up visit when he returned from the hospital. In addition, Defendant Garrigan gave Plaintiff a chrono for another EpiPen to use if he suffered another anaphylactic reaction. Finally, Defendants instructed the Food Services Department to provide Plaintiff with protein substitutions. Therefore, considering the evidence in the light most favorable to Plaintiff, the Court finds it insufficient to raise a dispute of material fact that Defendants were deliberately indifferent to Plaintiff's serious medical needs. *Cf. Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989) (summary judgment reversed where medical staff and doctor knew of head injury, disregarded evidence of complications to which they had been specifically alerted and, without examination, prescribed contraindicated sedatives).

      Plaintiff further argues that any treatment he received from Defendants was inadequate because his chronos were "not honored" and this caused him to "fear for [his] life" whenever he was served food. (SAC at 6-7.) He also argues that he was not given the "medical diet" he requested. (*Id.* at 6.) First, Plaintiff provides no evidence linking any problems he experienced to Defendants' treatment plan. At most, Plaintiff's allegation relating to the chronos not being honored amounts to negligence, which is insufficient to make out a violation of the Eighth Amendment. *See Franklin*, 662 F.2d at 1344; *Toguchi*, 391 F.3d at 1060-61, *McGuckin*, 974 F.2d at 1059; *O'Loughlin*, 920 F.2d at 617. Furthermore, Plaintiff's argument that Defendants

did not provide him with the requested "medical diet" amounts to a difference of opinion. Even if Plaintiff should have received different treatment for his medical needs, a difference of opinion as to the urgency and treatment of his medical needs is insufficient, as a matter of law, to establish deliberate indifference. *See Toguchi*, 391 F.3d at 1058, 1059-60; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Mayfield v. Craven*, 433 F.2d 873, 874 (9th Cir. 1970). Although the treatment plan Plaintiff received may not have been what he considered proper treatment, he presents no evidence that Defendants were deliberately indifferent to his serious medical needs. Rather, Defendants: (1) noted his food allergies upon his arrival and issued multiple chronos for his food allergies; (2) treated him when he suffered an anaphylactic reaction on January 19, 2009 by administering a shot of epinephrine, sending him to the hospital, and offering follow-up treatment; (3) provided a consultation with a dietician; and (4) provided him a phone consultation with the Chief Medical Officer. Thus, Plaintiff has failed to provide evidence regarding an essential element of this claim. Accordingly, Defendants are entitled to summary judgment as to Plaintiff's claim that they failed to provide adequate treatment for his food allergies.

    B.  <u>January 19, 2009 Incident</u>

Even if Plaintiff suffered an allergic reaction upon ingesting food with nut products on January 19, 2009, Defendants argue that Plaintiff has no evidence that they had a "sufficiently culpable state of mind" to amount to a violation of his Eighth Amendment rights. They further argue that Plaintiff "cannot show that Defendants (a) acted purposefully or failed to respond to [his] medical need; and (b) the harm was caused by indifference." (Mot. for Summ. J. at 9.) This Court agrees, and concludes that, at most, Defendants' actions amounted to negligence. However, as explained above, a claim of medical malpractice or negligence is insufficient to make out a violation of the Eighth Amendment. *See Franklin*, 662 F.2d at 1344; *Toguchi*, 391 F.3d at 1060-61, *McGuckin*, 974 F.2d at 1059; *O'Loughlin*, 920 F.2d at 617.

Here, a claim that Defendants were negligent in providing treatment does not support a claim of deliberate indifference. To the contrary, as explained above, the record shows that Defendants provided adequate care to Plaintiff before and after the January 19, 2009 incident.

1  Defendants Banks and Garrigan examined Plaintiff, gave him adequate treatment for his food
2  allergies, and prepared chronos relating to his food allergies. Plaintiff's complaints were not
3  unheeded by Defendants, who continued to give him follow-up care after the January 19, 2009
4  incident. Defendant Perea met with Plaintiff about his diet, prepared another chrono relating to
5  his food allergies, and instructed the Food Services Department to prepare protein substitutions.
6  Defendant Totell further contacted Plaintiff, offered him a phone consultation, prepared yet
7  another chrono relating to his food allergies, and followed-up on Plaintiff's allegations that he
8  was not receiving protein substitutions. Therefore, the Court finds that Defendants were not
9  deliberately indifferent because they did not deny or delay treatment of Plaintiff's serious
10 medical needs. *Cf. Ortiz*, 884 F.2d at 1314.

11      Accordingly, Defendants are entitled to summary judgment as to Plaintiff's claim that
12 they had a "sufficiently culpable state of mind" to amount to a violation of his Eighth
13 Amendment rights.

14      C.   Failure to Provide Protein Substitutes

15      While food is a basic human need that is protected by the Eighth Amendment, the Eighth
16 Amendment only requires that prisoners receive food that is adequate to maintain health. *Cf.*
17 *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) (temporary diet of Nutraloaf, which
18 exceeded inmate's daily nutritional requirements, does not violate Eighth Amendment). Helpful
19 to this analysis is *Davies v. Low*, No. S-03-0014 LKK JFM P, 2006 WL 2478063 (E.D. Cal.
20 Aug. 28, 2006), *adopted by Davies v. Low*, No. S-03-0014 LKK JFM P, 2006 WL 3780856
21 (E.D. Cal. Dec. 21, 2006), *affirmed by Davies v. Low*, No. 07-15046, 2008 WL 4707539 (9th
22 Cir. Oct. 16, 2008) (unpublished memorandum disposition).

23      In *Davies*, the prisoner claimed he had an allergy to eggs and tomatoes, and alleged that
24 the prison officials failed to provide him an adequate diet in light of his food allergies. 2006 WL
25 2478063 at *1. The district court noted that the facts were undisputed that the prisoner's weight
26 had been within normal limits, and the need for additional nutrition or supplements was
27 debatable. *Id.* at *7. The court also indicated there was a difference of opinion as to whether the
28 prisoner needed food supplementation in order to achieve an adequate diet. *Id.* Thus, the district

1 court concluded that there was no genuine issue of material fact, and granted summary judgment
2 to the defendants.

3 Similarly here, Defendants argue that they did not disregard Plaintiff's medical needs by
4 failing to provide protein substitutes.

5 Defendants presented evidence that the estimated nutrient needs for an active male of
6 Plaintiff's height and weight in 2009 were "1784 calories a day for health maintenance, and
7 58-73 gm Protein a day." (Perea Decl. ¶ 6.) The caloric intake of an active male is 2500-3000
8 calories a day. (*Id.*) Even avoiding fish and nut products, the SQSP menu averages the
9 minimum requirements. (*Id.*) Moreover, "extra calories and extra protein are included in all
10 meals for inmates;" therefore, an inmate who chose not to eat a particular item may still obtain
11 adequate nutrition. (*Id.*) Defendants provide evidence that, regardless of the exact amount of
12 calories or protein in Plaintiff's daily diet, it was nutritionally sufficient. (*Id.*) Plaintiff disputes
13 that he was getting the minimum requirements. (Opp'n to Perea Decl. at 2.) He simply claims
14 that Defendant Perea's "use of the BMI scale [was] inaccurate." (*Id.*) However, Plaintiff
15 provides no evidence refuting that his diet was not nutritionally sufficient. *See In re Oracle*
16 *Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (recognizing that once the moving
17 party meets its burden of demonstrating the absence of a genuine issue of material fact, "[t]he
18 non-moving party must do more than show there is some 'metaphysical doubt' as to the material
19 facts at issue.").

20 In addition, on January 21, 2009, Defendant Perea informed Plaintiff that he was
21 "approximately 5'9", and weighed 237 pounds," thus placing him in the Obese II or "extremely
22 obese" category. (Perea Decl. ¶ 4.) As mentioned above, Defendant Perea also stressed that "[i]f
23 a person is classified as Obese class II, the person may face a high risk of disease and faces
24 greater overall health risks." (*Id.*) Plaintiff attempts to explain his obesity by stating that he had
25 "excess skin from previous weight loss." (Opp'n to Perea Decl. at 2.) However, besides his
26 self-serving and conclusory statements, he presents no other evidence to counter Defendants'
27 claim relating to his obesity. *See In re Oracle Corp. Securities Litigation*, 627 F.3d at 387.
28 Defendants claim that because of Plaintiff's obesity, "[e]xtra calories and extra protein are

Order Granting SQSP Defendants' Motion for Summary Judgment
G:\PRO-SE\SJ.LHK\CR.09\Douglas191SQSPmsj.wpd  14

1  included in all meals for inmates, so avoiding foods that [Plaintiff] is allergic to would still
2  provide adequate nutrition for [his] health maintenance at the goal weight." (Perea Decl. ¶ 6.)
3  Meanwhile, Plaintiff claims that "Defendants provide[d] no evidence of extra calories and
4  protein, thus mooting the need for a protein substitution." (Opp'n to Tootell Decl. at 2.)
5  Defendants claim that they discussed weight loss with Plaintiff and a goal weight of
6  approximately 160 pounds, which meant a weight loss goal totaling seventy-seven pounds since
7  he weighed 237 pounds in 2009. (Perea Decl. ¶ 5.) Defendant Perea noted that "gradual weight
8  loss" for Plaintiff was "beneficial." (*Id.*) In contrast, Plaintiff claims that he did not agree to a
9  plan involving weight loss to 160 pounds. (Opp'n to Perea Decl. at 2.) Although Plaintiff
10 disputes Defendants' conclusion involving the beneficial nature of gradual weight loss, as
11 mentioned above, a difference of opinion between a prisoner-patient and prison medical
12 authorities regarding treatment does not give rise to a § 1983 claim. *See Franklin*, 662 F.2d at
13 1344. In order to prevail on a claim involving choices between alternative courses of treatment,
14 Plaintiff must show that the course of treatment the doctor chose was medically unacceptable
15 under the circumstances and that he chose this course in conscious disregard of an excessive risk
16 to Plaintiff's health. *See Toguchi*, 391 F.3d at 1058. Plaintiff has not done so.

17       None of the events recounted in the SAC, nor Plaintiff's medical records involving
18 Defendants are sufficient to support his claim that Defendants violated the Eighth Amendment
19 by failing to provide him with protein substitutes. The evidence presented merely reflects
20 Plaintiff's dissatisfaction and disagreement with Defendants' claim that Plaintiff was receiving
21 extra calories and extra protein in order to provide adequate nutrition for his health maintenance
22 at the goal weight. It also shows Plaintiff's disagreement with the beneficial nature of gradual
23 weight loss for an inmate who has been classified as "extremely obese." Furthermore, Plaintiff
24 does not allege that he suffered ill health related to the alleged inadequate nutrition. The
25 Constitution is not violated when appropriate medical treatment is provided.

26       In short, there is no evidence to suggest the food choices and weight loss plan Defendants
27 provided to Plaintiff were not adequate to maintain his health. The medical records reflected that
28 Plaintiff was "extremely obese" during incarceration at SQSP and that he was receiving adequate

1 nutrition for his health maintenance at the goal weight.  Further, there is no evidence suggesting
2 that Plaintiff suffered any ill health related to inadequate nutrition.  Thus, Plaintiff has not
3 established a genuine issue for trial on his claim that Defendants were deliberately indifferent to
4 his serious medical needs when they failed to provide him with protein substitutes.  Defendants
5 are entitled to summary judgment as a matter of law on this claim.  *See Celotex Corp.*, 477 U.S.
6 at 323.

Accordingly, Defendants' motion for summary judgment is GRANTED.[2]

## CONCLUSION

1. Defendants' motion for summary judgment (docket no. 111) is GRANTED. Judgment shall be entered in favor of SQSP Defendants and also in favor of SVSP Defendants, pursuant to the Court's April 25, 2011 Order granting SVSP Defendants' motion for summary judgment.

2. The Clerk shall enter judgment, terminate all pending motions, and close the file.

IT IS SO ORDERED.

DATED: 3/9/12

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

---

[2] At minimum, Defendants are entitled to qualified immunity because reasonable prison officials in Defendants' positions could have believed that their conduct was lawful under the circumstances.  *See Saucier v. Katz*, 533 U.S. 194, 205-06 (2001).

Order Granting SQSP Defendants' Motion for Summary Judgment
C:\Users\brownm\AppData\Local\Temp\notesF8C1A4\Douglas191SQSPmsj.wpd
16